# 2008 DTA 72

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE PONCE**
**PANEL XI**

EDALIZ RIVERA FIGUEROA
Apelante

v.

ALEXANDER ALVARADO ÁLVAREZ
Apelado

Núm. KLAN-08-00291

San Juan, Puerto Rico, a 12 de mayo de 2008

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel y la Juez Jiménez Velázquez

Jiménez Velázquez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La señora Edaliz Rivera Figueroa (Rivera), parte alimentista y en representación de sus hijos menores de edad, presenta el 26 de febrero de 2008 un recurso de apelación para que se revoque la determinación del Tribunal de Primera Instancia, Sala Superior de Ponce (TPI) contenida en la Resolución [1] dictada el 20 de enero de 2008 mediante la cual se rebaja la pensión alimentaria de los menores a $185.00 mensuales efectivo al 15 de enero de 2008, ya que se descartan los gastos alegadamente incurridos respecto a vivienda y cuido de los menores por no haberse presentado evidencia documental que acreditara dichos gastos, salvo por el testimonio de la parte alimentista.

Con el beneficio del alegato en oposición del padre alimentante, los autos originales de los casos de divorcio y de alimentos ante el TPI, y la jurisprudencia aplicable, revocamos la determinación del TPI al descartar los gastos de cuido y de vivienda durante el procedimiento para fijar en rebaja la pensión alimentaria de los dos hijos menores de edad. Veamos.

### I

La señora Rivera y el señor Alexander Alvarado Alvarez (Alvarado) contrajeron matrimonio el 14 de agosto de 2000 y durante su relación matrimonial procrearon a los pequeños, Alexander J. Alvarado Rivera [2] y Alexandra Alvarado Rivera, [3] quienes tienen actualmente, unos once (11) y siete (7) años de edad, respectivamente. Para agosto de 2004 ya la pareja estaba separada. Entonces, en el caso de alimentos entre las mismas partes (JAL2004-0417), se fija mediante la Sentencia del 31 de enero de 2005 una pensión alimentaria de $276.30 mensuales efectiva desde el 1ro. de septiembre de 2004 en beneficio de los menores. [4] La relación matrimonial concluye en divorcio por ruptura irreparable mediante Sentencia dictada el 2 de marzo de 2006 en el caso JDI2005-1268, la cual acoge la pensión alimentaria fijada previamente, pues no habían transcurrido tres años desde que fuera fijada inicialmente.

A ese momento, el padre alimentante ya había procreado fuera de matrimonio a sus otros dos hijos. Sin embargo, del Acta-Informe de la primera vista ante la Examinadora de Pensiones Alimentarias fechado el **16 de agosto de 2004** cuando se fija de manera **provisional** una pensión de $276.30 mensuales, se desprende como parte de las determinaciones de hechos y conclusiones de derecho que *"[e]l alimentante no tiene ningún otro hijo menor de edad dependiente."* Además, consta en el Acta-Informe que el padre alimentante comparece por derecho propio a la vista celebrada en dicha fecha, pero no cumplimenta ni presenta su Planilla Informativa (PIPE) debidamente juramentada. De igual manera consta que el padre alimentante Alvarado había renunciado voluntariamente a su trabajo y que no había realizado gestión de empleo en los últimos seis meses, por lo que se le imputa el salario mínimo federal al calcular la pensión alimentaria, ya que posee las destrezas y la aptitud para generar ingresos y cumplir con sus responsabilidades alimentarias en beneficio de sus hijos menores de edad. Conforme a las Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico entonces vigente, [5] y considerando el testimonio del padre alimentante, y la prueba documental (PIPE y sus anejos) y testifical de la señora Rivera, al señor Alvarado le corresponde aportar una **pensión alimentaria básica** de $168

mensuales.

También, el Acta–Informe acredita que la señora Rivera reclama entonces un gasto extraordinario de vivienda de $211 mensuales, de los cuales $140.66 son imputables a los menores alimentistas; así como un gasto extraordinario de $106 mensuales por concepto de cuido de los menores. En cuanto a los gastos extraordinarios que los progenitores vienen obligados a compartir conforme sus respectivos ingresos, se determina que al padre alimentante le corresponde aportar el 45% del gasto para una cantidad de $63.30 mensuales por concepto de vivienda y $45 mensuales por concepto de cuido. En su consecuencia, posteriormente y ante la incomparecencia del padre alimentante, queda fijada la pensión alimentaria permanente en $276.30 mensuales efectivo al 1 de septiembre de 2004 a ser depositada en la Administración para el Sustento de Menores (ASUME).

A partir de ese momento y mientras de dilucidaba el divorcio entre las partes, el expediente judicial en autos se caracteriza por la celebración de innumerables vistas para que el alimentante mostrara causa por el incumplimiento en el pago de la pensión alimentaria que culminaron en varias órdenes de arresto contra el señor Alvarado. [6] Más aún, durante los procedimientos conducentes a la revisión de pensión alimentaria, continuaron los atrasos en el pago de la pensión alimentaria. [7]

El 3 de octubre de 2007, una vez transcurridos exactamente los tres (3) años que establece la Ley de la Administración para el Sustento de Menores [8] para solicitar una revisión de la pensión alimentaria, el padre alimentante Alvarado, a través de su abogado, solicita una revisión urgente de la pensión alimentaria [9] de los hijos procreados con la señora Rivera, aquí apelante, en la que aduce haber sufrido una merma sustancial en sus ingresos y ser padre de dos hijos adicionales, a saber, Daniel Alexander y Alina Isabel Alvarado Alicea, entonces de unos tres y medio (3½) años, y de casi dos (2) años de edad, respectivamente. [10]

La vista para entender en la solicitud de revisión para la rebaja de pensión alimentaria se pauta para el 16 de enero de 2008 ante la Examinadora de Pensiones Alimentarias. La Planilla Informativa Personal y Económica (PIPE) del señor Alvarado no consta juramentada, pero informa solamente que recibe de $150-200 semanales por cuenta propia como ingreso sin indicar la fuente, ni patrono alguno, que recibe cupones de alimentos, y sin que conste factura o documento alguno que acredite los gastos reclamados por concepto de energía eléctrica, servicio de agua potable, celular, alimentos fuera del hogar, visitas al médico, medicinas, peaje y gasolina. No informa poseer bien alguno, ni tener deudas. La señora Rivera presenta su PIPE debidamente juramentada mediante la cual acredita mediante comprobante de depósito directo su salario mensual bruto de $1,168.88 y, luego de las deducciones de ley, el neto de $1,022.22, como Secretaria en la Universidad Pontificia Católica de Puerto Rico. Además, en la Planilla Informativa de la alimentista se detallan los gastos, incluyendo los aquí en controversia, las deudas, y el vehículo que posee mediante préstamo bancario.

Luego de escuchar el testimonio bajo juramento de ambas partes y de examinar las PIPES de ambos, de la Hoja de Trabajo para Pensiones Alimentarias preparada por la Examinadora de Pensiones Alimentarias el 16 de enero de 2008, así como de la Resolución, se le recomienda al TPI declarar Ha Lugar la solicitud de rebaja de pensión alimentaria promovida por el padre alimentante, y fijar la pensión alimentaria en $185 mensuales efectivo al 15 de enero de 2008 a ser consignada en la ASUME. Nuevamente al padre alimentante se le imputa generar un ingreso neto de $835.03 mensuales, es decir, el salario mínimo federal. [11]

En torno a la controversia planteada en el presente recurso sobre los gastos de vivienda y cuido que **fueron descartados en su totalidad por la Examinadora de Pensiones Alimentarias**, se expresa lo siguiente:

*"A preguntas de los abogados, la señora Rivera Figueroa declara que los menores los cuida la abuela materna, que ella le paga en efectivo y que no tiene ningún recibo del pago. A preguntas de la Lcda. Miranda Díaz [abogada de la alimentista] indica que ella le paga a su mamá por el cuido de los menores porque ella*

*incurre en gastos con éstos, que cuando ella llega a recoger los niños después que sale de trabajar, los niños están comidos y bañados."*

Con relación al gasto de vivienda reclamado, la parte custodio declara que la propiedad en donde vive es de un familiar de ella; que de igual forma le paga en efectivo y que no tiene ningún recibo del pago de la vivienda.

Dado que en el caso de autos no se presentó ninguna otra evidencia sobre el gasto reclamado con relación a cuido y a la vivienda que no fuera el testimonio de la parte reclamante, **el mismo no es tomado en consideración como parte del cómputo de la pensión alimentaria suplementaria,** ante la objeción de la parte alimentante. Es nuestro criterio que tomando en consideración lo dispuesto en la Reglas de Evidencia, se esperaría se hubiese cumplido con la regla de la mejor evidencia.

El TPI acoge las recomendaciones de la Examinadora de Pensiones Alimentarias mediante la Resolución [12] firmada el 23 de enero de 2008 y declara Ha Lugar la solicitud de rebaja de pensión alimentaria, por lo que fija dicha pensión en $185 mensuales efectivo el 15 de enero de 2008 a ser consignada en la ASUME. La Resolución aludida acompañada del Informe-Acta de notifican a las partes el 31 de enero de 2008. Oportunamente la alimentista, señora Rivera, presenta una solicitud de reconsideración el 11 de febrero de 2008, la cual es rechazada de plano el día 13 de dicho mes y año, y notificada de tal determinación el subsiguiente día 15.

Inconforme, la señora Rivera, como alimentista y en representación de sus hijos menores de edad, presenta el 26 de febrero de 2008 el recurso de apelación de marras.

## II

La alimentista plantea como error del TPI su determinación de que no se presentó ninguna otra evidencia sobre el gasto reclamado sobre cuido y vivienda que no fuera el testimonio de la parte reclamante, por lo que el mismo no es tomado en consideración como parte del cómputo de la pensión alimenticia suplementaria, ante la objeción de la parte alimentante. Estima la alimentista se cumple con la regla de la mejor evidencia.

En síntesis, la parte alimentista solicita que se revoque la determinación del TPI y se le imponga al alimentante el pago de una pensión suplementaria adicional a la básica de $35.97 para cuido de hijos y $82.28 por gastos de vivienda para un total de $303.25 mensuales por concepto de pensión alimentaria en beneficio de los menores de edad.

## III

### A. Obligación de alimentar de los progenitores e imputación de ingresos

El sostenimiento de un menor de edad es responsabilidad de ambos progenitores. Así pues, el monto de la obligación del alimentante queda determinada tomando en cuenta que cuando existe más de un alimentante, entonces procede repartir entre éstos el pago de la pensión alimentaria en una cantidad proporcionada al caudal respectivo de cada alimentante. Ambos progenitores de un menor de edad son alimentantes en proporción a su caudal, no empece que uno de ellos ostente la custodia legal del menor. Los custodios de un menor de edad también tienen responsabilidad en el sostenimiento de dicho menor en atención a su caudal que no es otra cosa que en consideración a su capacidad para generar ingresos. Ello nos lleva a concluir que tanto la madre como el padre, no importa quién ostente la custodia legal, tiene la obligación de aportar al sostenimiento del menor conforme a su caudal. Este principio, muchas veces olvidado, aparece como norma codificada en los Artículos 145 y 146 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 564 y 565, que establecen: *"[l]a cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo."* Véase,

*Robledo v. Rivera Rosa*, 149 D.P.R. 565, 572 (1999). Tampoco podemos olvidar que la capacidad para generar ingresos de los progenitores toma en consideración la preparación académica de cada uno, los bienes de fortuna que posean individualmente, ingresos devengados como aquellos no devengados, otros beneficios que reciban en efectivo o en especie, la condición de salud tanto física como emocional que éstos disfruten, así como las circunstancias económicas prevalecientes en el mercado de trabajo, entre otras consideraciones.

En atención a lo anterior, nuestro Tribunal Supremo ha establecido, respecto a los alimentos, que para determinar la capacidad económica de cada alimentante es preciso tomar en cuenta **todos** los ingresos devengados por éste, hasta los que no aparezcan informados en la planilla de información personal. En *Argüello v. Argüello*, 155 D.P.R. 62, 73-74 (2001), se consolida la norma jurídica de cómo imputar ingresos a un alimentante de la manera siguiente:

El tribunal de instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. 'Puede, al fijar la cuantía de la pensión, considerar aspectos, tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de las propiedades conque cuenta, la naturaleza de su empleo o profesión y otras fuentes de ingreso.' [Cita omitida] [I]ncluso, le impusimos al foro de instancia la obligación de tomar en cuenta en estos casos la realidad de la economía subterránea que prevalece en Puerto Rico. En particular, hicimos referencia a que en el país muchos profesionales y personas con negocios propios incurrían en la práctica de declarar fiscalmente parte de los ingresos reales que tenían. ... Por ello, expresamente indicamos que en casos [de alimentos], el tribunal de instancia, tomando en cuenta toda la prueba desfilada, puede inferir que el alimentante cuenta con medios suficientes para cumplir con la obligación alimentaria que se le imponga.

Por lo tanto, el tribunal viene obligado a escudriñar en la verdadera situación económica del alimentante, en especial, en aquellos casos en que éste alega que no tiene ingresos suficientes o que gana menos que antes. Es decir, el Tribunal viene obligado a verificar en lo posible que lo alegado por el alimentante no sea un intento por evadir su responsabilidad alimentaria.

Sabido es que la imputación de ingresos debe efectuarse cuando un alimentante con historial de incumplimiento en el pago de la pensión alimentaria de su hijo menor de edad, solicita una rebaja de pensión alimentaria con el único propósito de evadir su responsabilidad alimentaria. *Argüello, supra*, a las pags. 73-74. Toda imputación de ingresos al momento de fijar una pensión alimentaria en beneficio de un menor de edad, debe cumplir con criterios de razonabilidad y de proporcionalidad entre los gastos realizados y los ingresos verdaderos. También, se debe procurar **un trato igual para ambos progenitores** cuando las circunstancias del caso propenden a la imputación de ingresos, a saber, ante alegaciones de desempleo a pesar de algunos estar preparados profesionalmente y contar con destrezas ocupacionales, tener historiales de buenas remuneraciones, ingresos o salarios previos, o cuando éstos trabajan en negocios propios.

Atendida la norma prevaleciente sobre la responsabilidad de los progenitores para el sostenimiento de los hijos procreados, y los criterios necesarios para aplicar la imputación de ingresos a éstos al determinar la pensión alimentaria de un menor de edad, entonces es menester examinar el alcance de la función revisora del foro apelativo ante una determinación de un tribunal sobre la fijación de una pensión alimentaria en beneficio de un menor de edad.

El procedimiento para la revisión de las pensiones alimentarias luego de transcurridos tres (3) años de originalmente fijadas, está regulado por la Ley para el Sustento de Menores, 8 L.P.R.A. sec. 518 (c), *supra*, el cual requiere de la aplicación de las Guías Mandatorias para la Fijación y Modificación de Obligaciones Alimentarias en Puerto Rico (Guías Mandatorias) adoptadas en **mayo de 2006**. Por lo tanto, al presente caso, los alimentos en revisión le son aplicables las nuevas normas adoptadas para mayo de 2006, es decir, **el gasto de cuido y de vivienda de los menores ya no se consideran como gastos extraordinarios, [13] sino**

**suplementarios**. Así pues, las Guías Mandatorias definen la pensión suplementaria como aquella equivalente a la porción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponda por concepto de gastos suplementarios, que incluyen aquellos gastos de vivienda y cuido, cuando la persona custodia se vea obligada a incurrir para poder estudiar o ejercer una profesión u oficio. Además, bajo las nuevas Guías Mandatorias se establece claramente que al momento de determinar este tipo de gastos suplementarios, **el juzgador debe considerar no tan sólo los gastos que efectivamente se pagaron, sino aquellos que también deberían sufragarse para satisfacer las necesidades del alimentista**. Guías Mandatorias, Art. 4 (14) y (15).

De la pensión alimentaria básica determinada conforme a las nuevas Guías Mandatorias en $170 mensuales, [14] corresponde entonces añadir la cantidad correspondiente al cálculo de la pensión suplementaria en el caso de marras. Dicha pensión suplementaria debe considerar ciertos tipos de gastos permisibles los cuales deben prorratearse conforme al por ciento que constituye el ingreso del progenitor no custodio respecto a la totalidad de los ingresos de ambos progenitores, a saber, 44.96% le corresponde al padre alimentante. Dichos gastos permisibles incluyen aquellos por concepto de vivienda, ya sea alquiler o pago de hipoteca, educación privada como pública de los menores, cuidado de hijos, gastos de salud no cubiertos, y aquellos gastos extraordinarios recurrentes de éstos. Al examinar tales gastos suplementarios, podemos advertir que son gastos por concepto de aquellas **necesidades ineludibles y esenciales para el sostenimiento de un hijo menor de edad**.

Bajo estos principios se enmendaron las Guías Mandatorias en el año 2006, es decir, para que dicho tipo de gasto se considerara en el cálculo de la pensión alimentaria, no para que fuera descartado cuando razonablemente podemos concluir que se incurre en el mismo y más aún cuando el mismo debe ser sufragado por ambos progenitores, puesto que los pequeños necesitan un techo donde vivir, y de hecho, viven en una vivienda, que a menos que sea de la propiedad del progenitor custodio y esté salda, cuando sólo entonces no implicaría gastos suplementarios de vivienda para el alimentante. No resultaría razonable concluir que una familia vive gratuitamente en una vivienda en un país donde la vivienda es escasa y constituye un bien apreciado y sujeto a explotación económica. De otra parte, aun bajo condiciones de vivienda pública se incurre en un pago aunque mínimo, como ocurre respecto a la educación pública que no significa que los progenitores no incurran en gastos accesorios relacionados a la educación, y por ende, el alimentante no custodio deba contribuir a los mismos.

De igual forma, una madre que labora para generar ingresos se ve en la obligación de incurrir en unos gastos de cuido con relación a sus hijos menores de edad. Así en muchos casos se recurre a las abuelas de los menores para que prodiguen dicha atención y los cuidados necesarios. Resulta evidente que ello acarrea una serie de gastos para el recurso familiar que cuida diariamente a los menores que debe ser afrontado por ambos progenitores en atención a la capacidad para generar ingresos de éstos.

En cuanto a lo probatorio, basta señalar que las reglas de evidencia no requieren que un hecho quede probado con certeza absoluta, ni confiabilidad matemática, pues basta que se presente prueba que sostenga con mayor probabilidad que el hecho haya ocurrido de esa manera. Regla 10 (c) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (c).

**IV**

El padre alimentante en su alegato avala la recomendación de la Examinadora de Pensiones Alimentarias, y así la determinación final del TPI. Este se apoya en la adjudicación de la credibilidad que le mereció a la Examinadora el testimonio de la señora Rivera, es decir, que ésta no creyó que se incurriera en gasto alguno por concepto de vivienda y de cuido de los menores. Recomendación, a su juicio, que merece gran deferencia por parte del foro apelativo, pues no se ha demostrado que el TPI haya incurrido en error manifiesto, prejuicio, parcialidad o pasión que justifique nuestra intervención con la apreciación de la prueba y la adjudicación de la credibilidad que realizara la Examinadora en el caso de marras.

Más aún, el padre alimentante, en apoyo a la decisión impugnada, sostiene y argumenta **que la controversia planteada en el recurso es una estricta de evaluación de credibilidad hecha por el TPI**. Que la Regla 10 (g) de Evidencia, *supra*, R 10 (g), establece que cuando una parte, pudiendo haber ofrecido una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la prueba ofrecida deberá mirarse con sospecha. Así pues, que la prueba ofrecida por la alimentista para probar el alegado gasto de renta y cuido fue únicamente su testimonio. Argumenta pues, que aunque el testimonio de una persona es suficiente para establecer un hecho, dicho testimonio debe ser creído. Pero que en este caso, la Examinadora no creyó el testimonio de la alimentista de que ella paga casa y cuido en dinero en efectivo, sin tener ningún tipo de recibo o contrato a tales efectos. Por lo que dicho testimonio no provocó certeza o convicción moral en un ánimo no prevenido.

Consideramos que si la Examinadora no creyó que el alquiler y el cuido se realizaba con **dinero en efectivo**, ello no puede equipararse a que no se realiza pago alguno por dichos conceptos entendidos estos renglones como gastos suplementarios esenciales para el sostenimiento de los pequeños. El curso de acción de descartar los gastos en su totalidad es lesivo a los intereses de los menores cuyos alimentos están revestidos de gran interés público. La Examinadora, en ausencia de una prueba que acredite fehacientemente el monto exacto del gasto, debe adjudicarle una cuantía razonable conforme los costos en que se incurren, de ordinario, en dicha comunidad por los renglones de cuido de hijos y de una vivienda típica como en la que habitan los pequeños. Estos renglones ya se consideran como gastos cotidianos, indispensables, comunes, y necesarios de los menores, no gastos extraordinarios cuya evaluación rigurosa y examen cauteloso debe guiar el crisol adjudicativo.

Además, la Examinadora, y así también el TPI, debe recordar que los gastos suplementarios no tan sólo incluyen y consideran los gastos que efectivamente se pagaron, **sino también aquéllos que deben ser sufragados para cubrir las necesidades de los menores,** [15] como lo son la vivienda y el cuido de los pequeños.

Los alimentos de los menores no pueden fijarse en la aplicación abstracta de los requerimientos probatorios, sin ponderar los intereses de éstos y alejados del propósito que emana de las nuevas Guías Mandatorias, *supra*.

## V

Por las razones que anteceden, revocamos la Sentencia de Alimentos dictada el 31 de enero de 2008, y devolvemos el caso ante el Tribunal de Primera Instancia para la continuación de los procedimientos para la fijación de la pensión alimentaria en armonía con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la señora Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 72

1. La modificación de una pensión alimentaria en beneficio de los hijos menores de edad se entiende como una determinación judicial final, es decir, una sentencia susceptible de ser apelada ante el Tribunal de Apelaciones conforme resulto en *Figueroa v. Del Rosario*, 147 D.P.R. 121 (1998).

2. Fecha de nacimiento: 26 de noviembre de 1996.

3. Fecha de nacimiento: 13 de diciembre de 2000.

4. Para el 31 de agosto de 2005, la deuda de pensión alimentaria en atraso asciende a $2,515.60 conforme surge de los

autos originales del caso JAL2005-417. Luego, el 28 de septiembre de 2005, las partes llegan a un acuerdo sobre un plan de pago de $265 mensuales por dos meses, y los restantes meses a razón de $100 mensuales para saldar la deuda.

**5.** A partir el mes de mayo de 2006 entraron en vigor unas nuevas Guías Mandatorias para Fijar Pensiones Alimentarias en beneficio de los menores de edad.

**6.** Orden de Arresto fechada el 2 de febrero de 2006, que fuera enmendada en el mes de marzo y abril de 2006; y que culminara con la activación de la Unidad de Alimentos Interestatales para localizarlo, ya que el padre alimentante se traslada a los Estados Unidos, sin previa notificación al TPI ni a la parte alimentista.

**7.** El 4 de junio de 2007, la deuda de pensión alimentaria certificada por la ASUME asciende a $3,127.19 que corresponde al mes anterior, y conforme la Minuta de la vista ante el TPI del 14 de junio de 2007, la deuda al 30 de junio de 2007 se determina en $3,403.49, por lo que el TPI emite una Orden de Arresto contra el señor Alvarado por desacato civil por incumplimiento en el pago de la pensión de los menores. Este no comparece a dicha vista para mostrar causa. Ese mismo día, el padre alimentante, a las 4:16 de la tarde, abona en Banco Popular de Puerto Rico la cantidad de $1,500, subsistiendo aún una deuda por la diferencia.

**8.** La Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 518 (c), establece el modo para revisar una pensión alimentaria fijada luego de transcurridos los tres (3) años desde inicialmente fijada o modificada.

**9.** La misma consta unida al expediente del caso de alimentos JAL2004-0417, el cual esta consolidado con el expediente en el caso de divorcio JDI2005-1268.

**10.** Los pequeños nacen el 19 de mayo de 2004, y 4 de enero de 2006.

**11.** Nada indica el TPI sobre las destrezas y aptitudes del padre alimentante que pudieran justificar imputarle un ingreso mayor al salario mínimo federal, pues prácticamente lo trata como si estuviera desempleado sin capacidad para generar ingresos adicionales.

**12.** Véase, nota al calce 1.

**13.** Entendido el gasto extraordinario como aquel gasto fuera de lo común, no recurrente, y que excede las necesidades básicas y apremiantes de los menores en circunstancias ordinarias de vida. De otra parte, hay gastos extraordinarios recurrentes que son considerados al fijar la pensión alimentaria suplementaria de los menores en casos particulares.

**14. Pensión alimentaria básica**: ($835.03 x .1020 = $85.17) x 2 hijos = $170 mensuales. Nótese que para determinar la pensión básica para los menores de edad, las Guías Mandatorias consideran la totalidad de los menores alimentistas que dependen del padre alimentante para computar su correspondiente obligación por concepto de pensión básica alimentaria.

**15.** Ello, en atención a un criterio probatorio más flexible, no riguroso, y en esencia, realista de cómo acontece la vida familiar en nuestro país con su particular informalidad.